ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **R&B POWER, LLC**<br><br>Recurrente<br><br>v.<br><br>**AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO**<br><br>Recurrido | KLRA202500286 | **REVISIÓN**<br>procedente<br>de la Autoridad de Energía Eléctrica de Puerto Rico<br><br>Subasta Núm:<br>RFQ 00061764<br>(Req. 296792)<br><br>Sobre:<br>Impugnación de Adjudicación |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Sánchez Báez.[1]

Cintrón Cintrón, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 21 de julio de 2025.

Comparece ante este foro, R&B Power, LLC (R&B Power o parte recurrente) e impugna la adjudicación de la subasta número *RFQ 00061764 (Req. 296792)* sobre adquisición de equipo pesado para el Distrito de Riego en Guayama, Puerto Rico, notificada el 18 de marzo de 2025, por la Autoridad de Energía Eléctrica de Puerto Rico (Autoridad de Energía Eléctrica). Mediante esta, la Autoridad de Energía Eléctrica adjudicó la referida subasta a Rimco, LLC (Rimco).

Ahora bien, a poco examinar el dictamen recurrido, nos percatamos que la Autoridad de Energía Eléctrica no cumplió con las obligaciones que el debido proceso de ley exige para toda notificación de adjudicación de subasta. En vista de ello, nos vemos precisados a revocar la adjudicación de la subasta, devolver el caso a la Autoridad de Energía Eléctrica para que dicho organismo emita

---

[1] *Véase* Orden DJ 2024-062C, sobre enmienda a la orden de designación de Paneles en el Tribunal de Apelaciones. El juez Sánchez Báez sustituye a la jueza Rivera Marchand.

y notifique nuevamente su dictamen, a tenor con los requisitos legales correspondientes.

## I.

El 31 de enero de 2025, la Autoridad de Energía Eléctrica publicó en la plataforma electrónica *Power Advocate* y en su página oficial el aviso de subasta formal RFQ 00061764 (Req. 296792) para la adquisición de equipo pesado para el Distrito de Riego de Guayama, Puerto Rico.

En el pliego de la subasta se especificó que los equipos requeridos eran dos (2) tractores, una (1) excavadora hidráulica pequeña, una (1) excavadora grande, un (1) *bulldozer* y una (1) plataforma de arrastre. Además, se detallaron especificaciones técnicas de los equipos y los términos y condiciones con los cuales debían cumplir todos los licitadores. Entre estos se encontraba, *inter alia,* el cumplimiento con el *"Buy American Act"*, los términos de entrega y los términos de garantía de piezas y servicios.

Las siguientes compañías participaron de la subasta: 1) R&B Power, LLC; 2) Rimco, LLC y; 3) Teselta, LLC y procedieron a presentar ofertas.

Las ofertas de los licitadores fueron evaluadas por el Comité de Subastas "B", tomando en consideración el estricto cumplimiento con los requerimientos esbozados en el pliego de la subasta, el precio de las ofertas de los licitadores y las disposiciones del Reglamento Núm. 8518 de 10 de septiembre de 2014, conocido como Reglamento de Subastas.[2]

Ahora bien, tras realizar la evaluación correspondiente, el Comité de Subasta "B" adjudicó la buena pro a un (1) solo licitador, siendo este la compañía Rimco. En cuanto a R&B Power señalaron

---

[2] En ese sentido, surge del expediente que, para completar la evaluación de las propuestas, el Comité de Subastas "B" solicitó a R&B Power y Rimco información adicional sobre el cumplimiento con el requisito del *"Buy American Act"*.

que debido a que no cotizó todos los equipos y que, en algunos que, si cotizó, no cumplió con las especificaciones técnicas y los términos y condiciones requeridos, no adjudicaron la subasta a su favor.

Así las cosas, el 18 de marzo de 2025, la Autoridad de Energía Eléctrica emitió la *Notificación de Adjudicación* recurrida. Mediante la misma, determinó adjudicar la subasta en todos sus renglones a Rimco, bajo el fundamento de que fue el licitador que cotizó todos los equipos incluidos en la subasta, que cumplió sustancialmente con las especificaciones técnicas, términos y condiciones y que ofreció el servicio dentro de los parámetros presupuestarios.

No conforme con la decisión emitida, el 28 de marzo de 2025, R&B Power instó ante la Autoridad de Energía Eléctrica una moción de reconsideración. En síntesis, solicitó que se dejara sin efecto la resolución de adjudicación de la subasta concernida y que, a su vez, se le adjudicara la subasta en los renglones #1, #2, #3 y #5. Lo anterior fundamentado en que su oferta era la de "mejor valor" para la Autoridad de Energía Eléctrica y que el licitador favorecido, Rimco, incumplió con requisitos sustanciales establecidos en los pliegos de la subasta, lo que ameritaba su descalificación.

Transcurrido el término de rigor sin que la Autoridad de Energía Eléctrica actuara sobre el antedicho petitorio, el 19 de mayo de 2025, R&B Power recurrió ante este foro revisor mediante *Recurso de Revisión Judicial* y señala que se cometieron los siguientes errores:

> Erró la AEE al adjudicar la Subasta a favor de Rimco a pesar de que su oferta no cumplió con las especificaciones técnicas requeridas, términos y condiciones de la subasta.

> Erró la AEE al rechazar la oferta de R&B cuando representa el mejor valor ya que cumple sustancialmente con todos los requerimientos técnicos, términos y condiciones de la subasta y contiene el precio más bajo en los renglones #2, #3 y #5.

El 20 de junio de 2025, la Autoridad de Energía Eléctrica instó su *Alegato en Oposición a Recurso de Revisión Judicial.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

## A.

En nuestra jurisdicción, la contratación gubernamental de todo tipo de servicios está revestida del más alto interés público, pues persigue fomentar la inversión adecuada, responsable y eficiente de los recursos del Estado. *St. James Sec. v. AEE*, 213 DPR 366, 377 (2023), citando a *SLG Ortiz-Mateo v. ELA*, 211 DPR 772 (2023) y otros.

La subasta tradicional y el requerimiento de propuestas (*Request for Proposal o RFP*) son métodos mediante los cuales, tanto el gobierno central, como el municipal, adquieren bienes y servicios para así proteger el erario y garantizar que se realicen sus funciones administrativas responsablemente. *St. James Sec. v. AEE,* supra*; R&B Power v. ELA,* 170 DPR 606, 621 (2007).[3] A través de ambos mecanismos, se procuran conseguir "los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento". *Caribbean Communications v. Pol. de P.R.,* 176 DPR 978, 994 (2009). En la medida que haya pureza en estos procedimientos, los entes estatales y municipales promoverán

---

[3] Un requerimiento de propuestas "participa de características adjudicativas de la misma forma que la subasta tradicional". *R&B Power v. ELA,* supra, pág. 624. Ahora bien, debido a su naturaleza informal y flexible, y la erogación de fondos públicos que implica, es importante que su uso no se convierta en la norma como un escape a la competencia secreta de la subasta tradicional. *Íd.*, pág. 625. El *RFP* es comúnmente utilizado cuando se trata de bienes o servicios especializados que involucran aspectos altamente complejos o cuando existen escasos competidores cualificados. *ECA Gen. Contrac. v. Mun. de Mayagüez,* 200 DPR 665, 674 (2018); *CD Builders v. Mun. Las Piedras,* 196 DPR 336, 345 (2016). Nuestra jurisprudencia ha destacado que del *RFP* deben surgir "los requerimientos, los términos y las condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de la subasta". *Íd.*, pág. 346.

la libre competencia entre los postores. *Íd.* Véase, además, *De Jesús González v. A.C.*, 148 DPR 255, 267-268 (1999).

El *Request for Proposal* se diferencia de la subasta habitual por ser un procedimiento excepcional, informal y flexible que permite al oferente negociar con el gobierno central o municipal y enmendar o revisar las ofertas antes de la adjudicación de un contrato de adquisición de bienes y servicios. *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525, 531-532 (2019).[4]

Ahora bien, para que un tribunal pueda cumplir con su obligación constitucional y asegurar que el derecho a obtener la revisión judicial de una decisión de una agencia sea efectivo, **es imprescindible exigir que la misma esté fundamentada, aunque sea de forma sumaria**. *Puerto Rico Asphalt v. Junta,* 203 DPR 734 (2019) citando a *L.P.C. & D., Inc. v. A.C.*, 149 DPR 869, 877-888 (1999) (Énfasis nuestro). Además, una notificación fundamentada permite que los tribunales puedan "revisar efectivamente los fundamentos para determinar si la determinación de la junta ha sido arbitraria, caprichosa o irrazonable", más aún en el caso de subastas públicas, en virtud de las cuales se desembolsan fondos públicos. *L.P.C. & D., Inc. v. A.C.*, supra, a la pág. 879.

En armonía con lo anterior, recordemos que el derecho a cuestionar una subasta adjudicada es parte del debido proceso de ley. Por tanto, resulta indispensable que la notificación sea apropiada a todas las partes que les asiste tal derecho. Consecuentemente, una notificación de adjudicación de

---

[4] Es por todos conocido que las agencias administrativas, de ordinario, se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración, de acuerdo con los parámetros establecidos por la ley y los reglamentos aplicables. *CD Builders v. Mun. Las Piedras*, supra, pág. 349. Ello, toda vez que, en el ejercicio de sus facultades y su *expertise*, a las agencias "se les reconoce discreción al momento de considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general". *Íd.* Como consecuencia, los tribunales no debemos intervenir con la adjudicación de una subasta o el rechazo de una propuesta, salvo que la determinación administrativa adolezca de un abuso de discreción, arbitrariedad o irracionabilidad. *CD Builders v. Mun. Las Piedras*, supra, pág. 349.

subasta debe incluir lo siguiente: (1) los nombres de los licitadores en la subasta y una síntesis de sus propuestas; (2) los factores o criterios que se tomaron en cuenta para adjudicar la subasta; (3) los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos; y (4) la disponibilidad y el plazo para solicitar la reconsideración y la revisión judicial. *Pta. Arenas Concrete, Inc. v. J. Subastas*, 153 DPR 733, 743-744 (2001); *L.P.C. & D., Inc. v. A.C.*, *supra*, pág. 879.

La correcta y oportuna notificación de una adjudicación es un requisito *sine qua non* de un ordenado sistema *cuasijudicial*. Su omisión puede conllevar graves consecuencias. Por ende, la notificación defectuosa priva de jurisdicción al foro revisor para entender sobre el asunto impugnado. Lo anterior tiene el efecto de que el recurso que se presente ante un tribunal de mayor jerarquía sería prematuro. *PR Eco Park et al. v. Mun. de Yauco,* supra, págs. 538-539.

**B.**

La Autoridad de Energía Eléctrica (de conformidad con los poderes que le otorgó la Ley 83 del 2 de mayo de 1941, según enmendada, conocida Ley de la Autoridad de Energía Eléctrica de Puerto Rico) promulgó el Reglamento de Subastas, Núm. 8518 del 10 de septiembre de 2014. Esto con el propósito de "instituir guías uniformes para la recomendación, adjudicación y aprobación de subastas en la adquisición de bienes y servicios y en la venta de bienes muebles e inmuebles". Capítulo I, Sección I, Art. A del Reglamento.

En lo pertinente al asunto ante nuestra consideración, el referido reglamento establece que, luego de tomar una determinación, el Jefe de la División de Suministros o su delegado deberá notificar la adjudicación de la subasta a todos los licitadores que participaron en la misma. A su vez, en este, reproduciendo los

requisitos de la notificación de adjudicación de subasta establecidos por nuestro Tribunal Supremo, se estableció que la notificación de adjudicación, como mínimo, debe tener la siguiente información: 1) los nombres de los licitadores que participaron en la subasta y una síntesis de sus propuestas; 2) los factores o criterios que se tomaron en consideración para adjudicar la subasta; 3) los defectos, si alguno, que tuvieran las propuestas de los licitadores no seleccionados; 4) la disponibilidad y términos para radicar una Moción de Reconsideración o Revisión Judicial y; 5) la firma del Jefe de División de Suministros o su delegado. Capítulo V, Sección VIII, Art. B del Reglamento.

### III.

A pesar de que la parte recurrente propone la comisión de dos errores en la adjudicación de la subasta, para realizar un análisis completo y concienzudo del expediente ante nuestra consideración, debemos atender asuntos de índole jurisdiccional, cuyas consideraciones preceden sobre cualquier otro asunto. Veamos.

Una mera lectura de la notificación de adjudicación emitida por la Autoridad de Energía Eléctrica en este caso basta para percatarse que fueron incumplidos varios requisitos esenciales para sostener su validez.

A esos efectos, advertimos que, en la referida adjudicación, aun cuando la Autoridad de Energía Eléctrica indicó varios aspectos de las ofertas de los licitadores, no incluyó un resumen de cada una de las propuestas presentadas. Así, a modo de ejemplo, también notamos que en la referida notificación se hace referencia al costo de la propuesta de Rimco, pero no se incluyó dicha información sobre los demás licitadores. Además, tampoco se detallan o presentan comparaciones en cuanto a cuestiones importantes sobre las propuestas de los licitadores, como lo son: las cotizaciones de los equipos, el tiempo de entrega y los términos y condiciones en cuanto

a garantía de piezas y servicio. Conforme a nuestro estado de derecho, no bastaba con incluir planteamientos generales sobre las propuestas de cada uno de los licitadores, sino que era imperativo que la Autoridad de Energía Eléctrica incluyera una síntesis de la propuesta de los licitadores.

De igual forma, surge además de la referida notificación que la Autoridad de Energía Eléctrica se limitó a indicar, *inter alia,* que:

> La propuesta presentada por RIMCO, LLC cotiz[ó] todos los equipos incluidos en la subasta, cumplieron sustancialmente con las especificaciones técnicas, términos y condiciones; los requisitos, figura en el Registro de Proveedores de la Autoridad y el Registro Único de Licitadores de la Administración de Servicios Generales, cumple con ofrecer el servicio dentro de los parámetros presupuestarios, por consiguiente, se considera cualificado.

Sin embargo, dicha expresión carece de especificidad en cuanto a Rimco y, en cuanto a los demás licitadores, se realizaron planteamientos aún más generales sobre los incumplimientos con los pliegos de la subasta. Es decir, de la notificación tampoco se desprende cuáles fueron los criterios específicos utilizados para adjudicar la subasta. A saber, de esta no surge el análisis efectuado por la Autoridad de Energía Eléctrica o el Comité de Subastas "B" para adjudicar la subasta de la forma en que lo hicieron. Lo anterior unido al hecho de que no se realizó una síntesis de las propuestas, no permite que las partes adversamente afectadas o este foro revisor pueda evaluar adecuadamente el incumplimiento de los licitadores y en, consecuencia, los fundamentos para la adjudicación.

En ese sentido, debemos destacar que nuestro más Alto Foro ha reiterado que la parte adversamente afectada por la determinación de una agencia debe conocer los motivos de la agencia para su proceder, de lo contrario, el trámite de revisión judicial de la determinación administrativa se convertiría en un ejercicio fútil. *L.P.C. & D., Inc. v. A.C., supra,* pág. 878. Así pues, de no estar debidamente fundamentadas las determinaciones como la

anulación de la subasta o el rechazo de una propuesta de un licitador, estas equivalen a unas decisiones arbitrarias, producto de un procedimiento plagado de irregularidades. *RBR Const., S.E. v. A.C.,* 149 DPR 836, 857 (1999). De igual forma, la ausencia de la información mínima requerida en la notificación priva a este foro revisor de los elementos para considerar si la determinación recurrida resulta arbitraria o no.

Así las cosas, salta a la vista, que en la notificación bajo examen se omitió incluir: (1) una síntesis de las propuestas presentadas por los licitadores y; (2) los factores o criterios que se tomaron en consideración para adjudicar la subasta. Por lo que, aunque en la adjudicación notificada el 18 de marzo de 2025 la Autoridad de Energía Eléctrica incluyó parte del contenido requerido por nuestro ordenamiento jurídico, aún existen deficiencias fundamentales que inciden sobre nuestra función apelativa.

Analizado el expediente ante nuestra consideración, colegimos que procede la revocación de la adjudicación de la subasta de referencia por falta en el contenido de la notificación. La Autoridad de Energía Eléctrica no fundamentó la adjudicación de la subasta al licitador agraciado correctamente. *Puerto Rico Asphalt v. Junta,* supra; *L.P.C. & D., Inc. v. A.C.,* supra. En consecuencia, procede la devolución del caso a la Autoridad de Energía Eléctrica, para que conforme a lo antes señalado notifique correctamente la misma.

### IV.

Por los fundamentos antes esbozados, revocamos la determinación recurrida y devolvemos el caso a la Autoridad de Energía Eléctrica para que actúe conforme lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones